STATE *ex rel.* ALFRED NORRIS *v.* TOWN OF VERSHIRE, RICHARD W. BARRETT and Others.

*Towns. Town Meetings. Moderator. Estoppel. Quo Warranto.*

Where the moderator elected at the annual town meeting is called, without another election, to preside at another meeting warned and held during the year, the action of the meeting will still be valid, if he is allowed to preside without objection on that score on the part of the voters, and the meeting proceeds to the completion of the business for which it was warned. Thus, where the voters were warned to meet on February 1, to vote on the question of whether the name of the town should be changed pursuant to an act of the Legislature permissive thereof, and the town clerk, after reading the warning, called the moderator of the previous March meeting to preside, and he presided without objection on the part of voters, other than a jocose objection from one of the voters on the score of interest, and the voters voted to change the name of the town, and all subsequent steps provided for by the act were taken without objection, and the State's attorney, on the relation of a voter who voted against the change, brought a complaint for a writ of *quo warranto* against the town's clerk and selectmen, calling on them to show by what right they did the business of the town under the new name, it was *held*, that the voters were bound by the result of the meeting.

*Quære* whether a complaint for such writ for such purpose can be prosecuted at the relation of a private citizen.

THIS was a complaint praying for the issue of a writ of *quo warranto*. The complaint was brought by the State's attorney of Orange County, on the relation of Alfred Norris, of the town in that county formerly called Vershire, against said town, and Richard W. Barrett, its clerk, and William H. Eustice, C. E.

State *v.* Vershire.

Paine, and C. H. Flanders, its selectmen, asking that said clerk and selectmen show by what warrant and authority they assumed to do the business of said town under the name of Ely. The complaint stated in effect that by an act of the Legislature ap-proved November 26, 1878, the voters in said town were author-ized to vote on the question of changing the name of the town from Vershire to Ely. That act provided for a two-thirds vote by ballot at a meeting of such voters to be legally warned and held for that purpose, and provided that if such voters should so vote to change the name of said town, and a certificate of such vote, signed by the clerk of said town, should be filed in the office of the Secretary of State, the town should thereafter be called by the name of Ely. The complaint set out a warning in due form of a meeting by such voters to be held on February 1, 1879, and such action of the voters and others thereunder as would be a compli-ance with the terms of said act, if the meeting so warned and held was presided over by a legal moderator. There was evidence tending to show that when the voters assembled the town clerk read the warning, and called on Stephen B. Darling, who was elected moderator at the previous annual March meeting, to take charge of the meeting, and that Darling did so. It was not con-tended that he did not preside regularly and legally, but that he was not legally elected. There was evidence tending to show that no protest was made to his acting as moderator, except by John C. Carleton, a voter, who approached the moderator's desk in the early part of the meeting, and said to Darling that he ob-jected to his acting as moderator, because he was an interested person. There was evidence *pro* and *con* on the question of whether Carleton made that objection in jest or in earnest; and there was evidence tending to show that all of the voters, including Carleton and the relator, cast their ballots, the relator voting against the proposed change, and permitted the result of the bal-lot to be announced, recorded, and certified to the Secretary of State pursuant to said act, without protest. There was also evi-dence tending to show that Darling had been elected moderator at many previous March meetings, and that he had once presided as moderator at a special town meeting held in a year for which

he had been elected, without any election to the office at such special meeting.

The information was not verified by oath, nor was any one recognized for costs. The respondents moved to dismiss the information for that reason.

*S. B. Hebard* and *J. W. Rowell*, for the State.

The meeting was not legally held, and its proceedings were void, for that no moderator was chosen. Gen. Sts. c. 15, s, 7. The fact that Darling was chosen moderator at the then last March meeting, cannot avail. The moderator has no function beyond the final adjournment of the meeting he is chosen to govern. It could make no difference that the voters supposed otherwise. Nor is the relator estopped. He did what he could to resist the change of name, by voting against it. He was not bound to protest : he might seek his remedy. The *King* v. *Morris*, 3 East, 213 ; The *King* v. *Clark*, 1 East, 38.

Usage would avail nothing. Abuses of power and violations of right derive no sanction from custom. 1 Dillon Munic. Corp. s. 56 ; *Hood* v. *Mayor*, &c., 1 Allen, 103.

The inhabitants of the town have a public interest in the town's name. Doing the business of the town under an improper name, is a usurpation of a franchise ; hence *quo warranto* is the proper remedy. Angell & Ames Corp. s. 734 ; 2 Dillon Munic. Corp. s. 714.

The motion to dismiss should be overruled.

*Farnham & Chamberlin* and *A. S. Austin*, for the respondents, contended that as the relator was present at the meeting and voted without objecting to the alleged informality, he was estopped to pursue the complaint, and cited *Queen* v. *Green*, 2 Q. B. 760 ; *Regina* v. *Lockhouse*, 14 Law T. Rep. N. s. 359 ; *Cate* v. *Furber*, 56 N. H. 224 ; *People* v. *Waite*, 70 Ill. 25 ; Bigelow Estop. 578 ; High Ext. Rem. ss. 631, 641, and cases *passim*. They also contended that even though the moderator was moderator *de facto* only, which they denied, yet, as he had exercised the duties of the office, the law, on principles of policy, would hold his acts valid,

State *v.* Vershire.

and that the complaint should be dismissed; and on the former point they cited numerous cases.

The opinion of the court was delivered by

Ross, J. This is a *quo warranto* information brought by the State's attorney for the county of Orange, at the relation of Alfred Norris, of the town formerly called Vershire, in said county, against R. W. Barrett, town clerk, William H. Eustice, C. E. Paine, and C. H. Flanders, selectmen of said town, asking that they may show by what right and authority they are transacting and doing the business of said town under the name of Ely. The information states that by an act of the Legislature, passed in 1878, the voters in said town were authorized to vote on the question of changing the name of the town from Vershire to Ely, and if two-thirds of the legal voters so voted at a town meeting thereof legally warned and holden for that purpose, and their action was duly certified to the secretary of the state, then the town should thereafter be called by the name of Ely. The information sets out the action of the voters of the town under said act, by which it appears that the terms of said act were complied with, if the meeting was presided over by a legal moderator. It appears that Stephen B. Darling had been elected the moderator at the previous annual March meeting, and that, once such moderator presided at a special town meeting held during the year for which he had been elected, without any election to that office at such special meeting. It is not claimed that there is any law sanctioning such practice. When the voters had assembled agreeably to the notice, to vote on the question of changing the name of the town, the town clerk read the notice, and called upon Mr. Darling to take charge of the meeting as moderator, and he did so. No claim is made that he conducted the meeting irregularly or illegally in any respect. The objection made is that he was not legally elected to the office of moderator. No protest nor objection was made to his acting as moderator, except by John C. Carleton. His objection was not on the ground that he was not the legal moderator of said meeting, but that he was interested, so that he was not a fit or proper person to act in that capacity. We are also satisfied that this ob-

State *v.* Vershire.

jection was made rather jocosely than in earnest, and not in any sense as a public protest to proceeding because Darling had not. been legally elected to the office of moderator. All the voters, including Carleton and the relator, cast their ballots and allowed the result to be announced, recorded, and certified to the secretary of the state, without protest or objection. On this state of facts, on numerous adjudged cases, the relator has no standing in court to prosecute this information and question the binding effect of the vote then cast. Neither would Carleton have, if the information had been filed and prosecuted by him, as relator. The voters there assembled pursuant to a legal notification, were legally bound to know their rights in regard to the election of a moderator ; and, when they sat silently by and allowed their town clerk to call upon Mr. Darling to act in that capacity, and him so to act, and cast their votes, each voter thereby bound himself to abide the result of such ballot, and has no standing in court to be heard to question the result thus determined, whether Darling was a moderator *de jure,* or only *de facto.* Public policy and fair dealing in matters of public concern alike concur in holding them bound by the result of their votes thus ascertained and announced. High Ext. Rem. ss. 658, 659, 686, 687, 709. Hence, on the merits, the petition should be dismissed. In thus deciding the case on its merits, we do not wish to give countenance to the idea that a *quo warranto* information can be prosecuted at the relation of a private citizen, to oust a municipality from using a particular name in the exercise of its corporate functions. A municipality is a subordinate but integral part of the State. Its name is given by the State. It is questionable whether a private citizen, though of the municipality, has such a right and interest in the name in which it shall or may exercise its corporate functions, that he can institute and prosecute proceedings of this character to forfeit such a franchise, if franchise it be, and irrevocably determine the name under which its corporate functions shall be exercised. But without deciding this question, on the facts of this case the relator cannot be allowed to do it.

*The information is dismissed.*